KOHNSTAMM (UNITED STATES v.). See Case No. 15.542.

KOLLOCK (GIFFORD v.). See Case No. 5,-409.

# Case No. 7,923.

## The KOLON.

[9 Ben. 197.] [1]

District Court. E. D. New York. July, 1877.

MARITIME LIENS—CARRIERS—DAMAGE BY ANCHOR AT BOW—APPORTIONMENT.

1. Where a schooner lying across the end of a pier left her inshore anchor hanging at the bow. with the flukes under water, and a canal boat that had occasion to haul up to the pier in the slip caught her stern on the anchor and was damaged so that she sunk with her cargo on board: *Held*, that it was negligence for the schooner so to leave her anchor, and that it was negligence for the canal boat to haul in as she did, when she knew the anchor hung in a dangerous way, without any precaution to keep herself clear of it.

[Cited in Price v. The Sontag. 40 Fed. 176.]

2. The fault being mutual. the damages must be apportioned: and there being no damage to the schooner, the owner of the canal boat is entitled to a decree for half his damages. and the owner of the cargo for the whole of his damages against the schooner.

In admiralty.

W. W. Goodrich, for libellants.

Benedict, Taft & Benedict, for claimants.

BENEDICT, District Judge. These two actions are brought. one by the owner of the canal boat Hope, the other by the owner of the cargo of the same vessel. to recover damages resulting from the sinking of the canal boat on the 22d day of November, 1875, near the pier at the foot of Seventy-Ninth street in the East river.

The Hope was lying outside of another boat that was moored at the bulkhead, south of the pier, at the foot of Seventy-Ninth street, with her stern towards the pier. After the Hope had taken this position the schooner Kolon took a position at the end of the pier, at the foot of Seventy-

[1] [Reported by Robert D. Benedict. Esq.. and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

Ninth street, heading down the river, her bow therefore pointing towards the stern of the Hope. The Kolon was securely moored at the end of the pier by lines to the pier, but her bow projected several feet below the corner of the pier, and her inshore anchor was hanging from her port bow, the flukes below the water-line.

About half-past ten o'clock in the morning, it became necessary for the boat lying inside the Hope to come away from the bulkhead and for the Hope to take her place. In order to do this the bow and stern lines of the Hope were slacked, so that the inside boat could get out, and when the attempt was made to haul the Hope to the bulkhead by heaving on the stern line, it was found that her stern had caught upon the anchor hanging at the bow of the Kolon. Upon slacking the chain the Hope went free, but the hole made by the anchor caused her to sink, whence the damage to recover which these suits are brought.

The foundation of these actions is negligence, and there can be no recovery without negligence on the part of the Kolon is found. If, as claimed on the part of the Kolon and shown by the evidence, the position of the Kolon remained unchanged while the Hope was moving, the only negligence on the part of the Kolon to be suggested is in lying where she was or in allowing her anchor to hang as it did.

To lie at the end of a pier cannot be held to be negligence in itself, but the place is dangerous, calculated to interfere with the movements of vessels in the slips, and entails special responsibility. Thus rule 11 of the harbor masters' regulations prescribes that "vessels at the end of wharves or piers shall haul either way as to best accommodate vessels going in or coming out from such wharves or piers." The Kolon, in this instance, was under a greater responsibility, because she lay with her bow projecting some distance beyond the line of pier. Extending thus partly across the slip the position of her anchor, not catted but hanging from the bow, with flukes below the water, was especially dangerous to vessels moving about the slip. Rule 8 of the harbor masters' regulations requires of a vessel lying alongside the piers that the flukes of the off-shore anchor be taken in on the forecastle.

In respect to the in-shore anchor there is no regulation, but it is evident that where a vessel is lying at the end of a pier with her bow extending beyond the line of the pier the in-shore anchor, if not catted, is as dangerous, to vessels moving in the slip, as the off-shore anchor of a vessel lying alongside the pier. I am of the opinion that it is negligence for a vessel lying as the Kolon was to allow her anchor to hang as she did. The proofs show it to have been so considered, not only by those in charge of the Hope, but by the mate in charge of the

Kolon; for it is proved and not contradicted that the owner of the Hope told the mate of the Kolon that the position of the anchor was dangerous, and the mate did not dispute it. Furthermore, the mate was told that the Hope would be obliged to haul in in the morning, and he promised to have the anchor out before that time. The Hope did haul according to the notification, and in the movement, which would otherwise have been attended with no danger, she was sunk by catching upon the anchor, which had been left in its dangerous position. It seems clear, then, that the Kolon was guilty of negligence.

The remaining question is whether the Hope was also in fault. It is proved and not disputed that, by the exercise of care, the Hope could have been held up against the eddy tide while taking the place of the inside boat, so as to avoid contact with the anchor. And I am of the opinion she was bound to take this precaution. She knew that the distance between her stern and the Kolon's bow was small, and she knew that the anchor was still hanging from the bow. She gave no notice to the Kolon that she was about to haul, at the time of the hauling, but undertook the manoeuvre of getting in to the bulkhead without hitting the anchor. In this undertaking she omitted to take an obvious and, as it turned out, a necessary precaution to avoid accident. Where the circumstances are extraordinary the unexcused omission to use corresponding effort is negligence. This then is a case of mutual fault. There was no damage to the Kolon. The owner of the Hope may therefore have a decree for one-half his damages. The owner of the cargo, in accordance with the decision of the supreme court of the United States in the case of The Atlas [93 U. S. 302] must be allowed to recover of the Kolon his whole loss.