## THE D. H. MILLER.

## MERCHANTS & MINERS TRANSP. CO. v. NEW ENGLAND DREDG-ING CO.

(Circuit Court of Appeals, First Circuit. October 23, 1896.)

No. 166.

1. COLLISION—VESSEL AT ANCHOR—HARBOR CURRENTS.

A moving vessel, colliding with a dredge at anchor, is not to be excused on the ground that she was deceived by the tide, when the collision occurs in a harbor where the set of the various currents should be well known.

2. SAME—PRESUMPTION AGAINST MOVING VESSEL.

A moving vessel, colliding with a dredge at anchor, must exonerate herself from blame by showing that it was not in her power to prevent collision by any practicable precautions. The Virginia Ehrman, 97 U. S. 309, and Steamship Co. v. Calderwood, 19 How. 241, followed.

3. SAME—PRESUMPTIONS.

Where one vessel is clearly proven in fault, the other is not to be held guilty on mere presumptions or suggestions arising from the fact that a collision occurred. The Oregon, 15 Sup. Ct. 804, 158 U. S. 186, applied.

4. SAME—STEAMER AND DREDGE.

A steamer which collided with a dredge engaged in deepening the channel in Boston Harbor, in broad daylight, *held* solely at fault.

Appeal from the District Court of the United States for the District of Massachusetts.

This was a libel by the New England Dredging Company against the steamer D. F. Miller, the Merchants & Miners Transportation Company, claimant, to recover damages resulting from two collisions of the steamer with the libelant's barge or dredge. The district court rendered a decree for the libelant, and the claimant has appealed.

Richard Stone, for appellant.

Wm. H. Leonard, for appellee.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. This appeal relates to two collisions between a steamer coming out of, and afterwards entering, Boston Harbor, and a barge engaged in deepening a channel under the authority of the state of Massachusetts, and secured by spuds in the respective positions of doing her work, at points inconveniently near the wharf of the steamer. The collisions occurred in open daylight, and without any special stress of tide or weather. The steamer has rested her case on the propositions that she was navigated with prudence and skill, and that the barge was in fault in certain particulars, to which we will refer. She fails to point out precisely why the collisions occurred, and, what is of more importance, she fails to show any extraordinary circumstances leading up to them which should not have been anticipated. She claims, at least with reference to one of the collisions, that the tide somewhat deceived her; but that, in a harbor where the set of the various currents should be known, this is no defense, even as between vessels under way, with

reference to which errors of judgment are sometimes excused, was made especially clear in The Britannia, 153 U. S. 130, 14 Sup. Ct. 795. There may be a suggestion that the barge was moored at improper places in an improper way, but there is no such sufficient proof with reference thereto as demands the attention of the court. Therefore the rules as between a vessel properly at anchor in a harbor and a steamer navigating in her neighborhood in the open day apply to this case. These rules are laid down with great strictness. In the case of a barge engaged as this one was (The Virginia Ehrman and The Agnese, 97 U. S. 309, 315), they were stated in the following terms:

"Vessels in motion are required to keep out of the way of a vessel at anchor, if the latter is without fault, unless it appears that the collision was the result of inevitable accident; the rule being that the vessel in motion must exonerate herself from blame by showing that it was not in her power to prevent the collision by adopting any practicable precautions."

Practically the same was laid down in a general way in Steamship Co. v. Calderwood, 19 How. 241, 246. As thus stated, it is, as already said, one of great strictness, the reason of which can be explained by the expressions found in The Merchant Prince [1892] Prob. 179, 187. There Lord Esher said, referring to the duties of a ship navigating with reference to one at anchor, that "the one ship ought to be under perfect command, and therefore able to get out of the way of the other ship if she sees her; and the other is a helpless thing, which cannot do anything." In The Virginia Ehrman and The Agnese the statement of the rule may be said to have been a dictum, as in that case there was clear negligence on the part of the colliding vessel; but its terms as there set out are recognized everywhere. Marsd. Mar. Coll. (3d Ed.) 35, 501. Its latest statement was in The Merchant Prince, ubi supra, where it was applied with great strictness. The rule is also given in a general way in The Indus, 12 Prob. Div. 46. Another case, where precisely the same defense set up in this case was rejected, is The City of Peking, 14 App. Cas. 40. In view of these settled principles, it is impossible to support this appeal upon the defense that the steamer was not at fault.

A fault charged against the barge with reference to the first collision is that her scow, intended to receive the dredged material, was lying on her port side, thus narrowing the channel, while it might have been, with somewhat less convenience, laid on her starboard; and with reference to the second, which occurred Sunday, an alleged fault was that she had not brought home her bucket, but that it and its appurtenances were allowed to project some 30 or 40 feet beyond the forward part of the barge, and that the steamer drifted with the tide against this bucket, coming in collision with it only, and would have cleared the hull of the barge. With reference to each of these particulars there are no such known usages, or such specific evidence in the record, as justifies us in treating them as anything more substantial than mere suggestions. Nor did the facts suggested introduce elements of difficulty seriously embarrassing the movements of the steamer, or making it impracticable for her to

keep clear. Moreover, had the location of the scow or the position of the bucket in either case so narrowed the passage that it was impossible for the steamer to go by without striking, or even only extremely hazardous to attempt going, the steamer would still be in fault, as she was navigated in broad daylight, with full knowledge of existing conditions. The result is that, as to them, the rule applies that, where one vessel is clearly proven in fault, the other is not to be held guilty on mere presumptions or suggestions arising from the fact that a collision occurred. The Oregon, 158 U. S. 186, 197, 15 Sup. Ct. 804, 809, and the cases there cited.

It is also claimed that the barge was in fault for not raising her spuds when she saw the probability of a collision, and thus either preventing it or easing it; but this was not a maneuver of such a customary nature, or so clear as to its probable effect, that we can say that the barge was in fault in that respect under the rule in extremis.

The decree of the district court is affirmed, with interest, and the costs of this court are adjudged to the appellee.