### THE MARY S. BLEES.

#### (District Court, S. D. Alabama. December 27, 1902.)

#### No. 973.

1. COLLISION—STEAMER AND ANCHORED BARGE—DEFENSE OF INEVITABLE ACCIDENT.

Evidence examined, and *held* not to sustain the defense of a steamer that her coming into collision with and sinking a barge moored in a proper place on the bank of a river, when the steamer was passing down the stream, was due to inevitable accident, but to show that the steamer was in fault for failing to exercise the foresight and precaution required of her under the circumstances, and for unnecessarily stopping and backing to "straighten up" before entering a narrow part of the channel, when in such a position that the wind and current carried her against the barge.

In Admiralty. Suit for collision.

Gregory L. & H. T. Smith, for libelants.
R. H. & N. R. Clarke, for claimant.

TOULMIN, District Judge. About noon on February 2, 1902, the libelants' barge was moored to the east bank of the Warrior river, at or near what was known as the "Government Lock No. 5" on said river. It was floating partly over what is the bank of the river in the ordinary stage of the water. About 360 feet below where the barge was lying, the channel of the river was somewhat narrowed by piling extending from the west bank a short distance into

the river, which piling had been driven and used in connection with the construction of said lock. The river was high. Its waters were out of its banks, except at the bluffs and other high points. The current was swift and strong. The wind was blowing in puffs from the northwest, and estimated by some of the witnesses at a velocity of 20 to 25 miles an hour. A short distance above where the barge was lying there is a bend in the river to the eastward. The steamboat Blees had been engaged in navigating up and down said river prior to the time of the collision complained of, and had several times passed the point where the barge was moored during the time it was moored there. Her officers well knew the location of the barge, and the manner in which it was tied to the bank. Her pilots were familiar with the river, its current and course, and its navigation. The machinery and steering apparatus of the Blees were in good order, and she had a full complement of officers and crew. Under these conditions, she was passing down the river, and collided with the barge, pressing her against the trees on the bank of the river. The barge was shortly thereafter found to be damaged, and it soon filled with water, and sank to the bottom of the river at or near the point where it was moored. It is not very clear from the evidence whether the Blees collided broadside, with her bow "head on," or quartering with the barge, and whether she struck the barge once or twice. I think the weight of evidence is that the barge was struck twice by the Blees,—once with her bow as she came down stream, and again broadside after she had swung around just below the barge, and had put her bow upstream, and was slowly proceeding in that direction.

It is well settled that a vessel in motion is bound to steer clear, if possible, of a vessel at anchor or properly moored. The Minnie, 40 C. C. A. 312, 100 Fed. 128; The Oregon, 158 U. S. 203, 15 Sup. Ct. 804, 39 L. Ed. 943. "When a moving vessel runs into a vessel anchored or moored in a lawful place, the presumptions are all against the moving vessel, and she is presumed to be at fault unless she exonerates herself. The presumptions against her are strong. Practically, her only defense is vis major or inevitable accident." Hughes, Adm. 261; The Scotia, 14 Wall. 170, 20 L. Ed. 822. The defense here is inevitable accident. This defense will not avail the colliding vessel unless she is shown to have been free from fault. The Severn (D. C.) 113 Fed. 578, and authorities therein cited. "The defense of inevitable accident cannot be sustained unless it appears that both parties have endeavored by all means in their power to prevent the collision; nor can the defense be maintained where a vessel voluntarily put itself in a situation where it receives the effect of natural forces, the result of which should have been foreseen, and might reasonably have been anticipated." Spencer, Marine Coll. § 195. In The Mabey & Cooper, 14 Wall. 215, 20 L. Ed. 473, the court said:

"'Inevitable accident' * * * must be understood to mean a collision which occurs when both parties have endeavored by every means in their power, with due care and caution, and a proper display of nautical skill, to prevent the occurrence of the accident, and where the proofs show that it occurred in spite of everything that nautical skill, care, and precaution could do to keep the vessels from coming together."

The Grace Girdler, 7 Wall. 196, 19 L. Ed. 113.

"By inevitable accident is not meant one which was absolutely a physical impossibility to have prevented, but one which could not have been avoided by that prudence and forethought which careful men would exercise under the circumstances." Spencer, Marine Coll., supra.

The evidence satisfies me that the barge was not in fault. It was tied to trees on the bank of the river, and near into the bank. It was out of the channel, and of the ordinary track of steamers navigating the river. It had been moored at that place for at least six weeks immediately prior to the accident, and during that period several different steamers had from time to time passed up and down the river without difficulty or interference. It was not an obstruction to navigation, and was, in my opinion, moored in a lawful and proper place.

The evidence for the Blees was, in substance, that she was coming down the river in full control of the officers navigating her; that when she got about abreast of the barge, and some 20 or 25 feet from her, she stopped her headway, and backed up the river to "straighten up," in order to make the opening by the obstructions (meaning the piling referred to); that when she stopped backing, and before she could straighten up and go ahead again, the wind and the current, which set in towards the east bank of the river, caused the pilot at the wheel to lose control of her, and she was carried by the wind and current against the barge. The pilot testified that he backed the Blees to straighten up in order to pass through the opening at the obstructions; that he did not do so sooner, and farther up the river, because he had not deemed it necessary. He further testified that, before the Blees could be straightened up, the wind took her, and he lost control of her. The witness Bartee, who testified on behalf of the Blees, was a pilot on her at the time of the collision, but was not then at the wheel, navigating her. He was shown to be a pilot of large experience on the Warrior river, and he testified that, had he been at the wheel, he would not have backed the Blees to straighten up at the time and place as was done, but that he would have gone ahead, and undertaken to have made the opening at the obstructions, and that, in his opinion, he could have safely done so. He further stated that, had he considered it necessary to back and straighten her up in order to get through said opening, he would have backed her before she got so near to the obstructions, and that he would have decided whether or not it was necessary to do so before she reached the point where she was stopped and backed up. It was the duty of the Blees to have shaped her course so as to avoid the collision with the barge. She should have kept her course down the river, having due regard to any special circumstances which may have existed at the time rendering a departure from her course necessary in order to avoid immediate danger to herself. The obligation is upon her to show that the departure from her course was necessary. I think the evidence tends to show that it was not necessary. However this may be, the evidence does not satisfy me that the conditions were such as to make the accident an in-

evitable one. On the contrary, it seems to me that those navigating the Blees, being well aware of the character and course of the current and of the wind prevailing at the time, failed to exercise the foresight and precaution to guard against them demanded by the circumstances; that backing the Blees to straighten her up at the time and place it was done was a fault of judgment; and that "voluntarily putting herself in a situation where she received the effect of natural forces, the result of which should have been foreseen, and might reasonably have been anticipated," was a lack of due caution and care.

My opinion is that the Blees is responsible for the damages, and that the libelants are entitled to recover the cost of the raising and repairing of the barge, and the reasonable value of its use during the detention for repairs,—for at least such time as the libelants would probably have used it. I ascertain such damages to be $1,773.96. Let a decree be entered for that sum.