## THE OVERBROOK.

(Circuit Court of Appeals, Second Circuit. August 1, 1905.)

### No. 221.

1. COLLISION—TOW DRIFTING AGAINST VESSEL AT PIER—LIABILITY OF TUG.

A tug with a number of coal barges in tow which rounded to at the mouth of Newtown creek, Long Island, to permit the barges to sag into the creek, where some of them were to be distributed, was in fault for a collision between one of the barges and a derrick which was lying at a wharf with others on the north side and was seen by the master, and the fact that he miscalculated the distance or the effect of the wind and tide did not relieve the tug from liability.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, §§ 68-70, 200.]

2. SAME—VESSEL LYING AT PIER—DANGEROUS EXPOSURE OF ANCHOR.

A vessel while lying at a pier is bound to have her anchor out of the way of passing vessels whenever there is liability of collision or danger of interference with their movements, and a derrick lying outside of two other vessels at a bulkhead in the mouth of a creek, where it was customary to distribute barges, the whole extending into the stream over 100 feet, which allowed her anchor to hang over the outside in the water without necessity, was in fault for the sinking of a barge forming part of a tow entering the creek, which swung against the derrick and tore a hole in her bottom by catching on the anchor.

Appeal from the District Court of the United States for the Southern District of New York.

Henry G. Ward, for appellant.

E. G. Benedict, for respondent.

La Roy S. Gove, for libelant.

Before LACOMBE and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. On the afternoon of Sunday, October 18, 1903, a scow and two dredges belonging to the R. G. Packard Company were lying alongside each other at the bulkhead between River street and the East river on the northerly side of the entrance to Newtown creek, Long Island, and opposite Bergen Dock on the south side, and extending out from said bulkhead 103 feet into said creek, which at this point is about 653 feet wide. The anchor chain of the outer dredge, No. 6, was hanging over the outer side of the dredge with the stock of its anchor submerged and the fluke about eight feet under water and a foot or two from the bottom. On said afternoon claimant's tug Overbrook, with a tow of nine barges made up in two tiers, each four abreast, with one tailing be-

hind, was proceeding on the way from Morris street, Jersey City, up the East river, bound for said Newtown creek and points in the East river, with a flood tide and a light northwest wind. When it reached Newtown creek the tug rounded to in order to let the tide swing the tow into the creek so that the barges could be taken to Bergen Dock and distributed. The master of the Overbrook saw the dredges, and expected that the tow would clear them, but it sagged up and into the creek, and one of the barges, the Western Star, the outer port boat in the second tier, which was loaded with coal, drifted over against said dredge No. 6 and heeled over and caught on the fluke of said submerged anchor, which tore a hole in the barge's bottom, and she shortly afterwards filled and sank. The libelant, as owners of the barge Western Star and bailee of her cargo, brought this libel against the Overbrook, and her owners, the Pennsylvania Railroad Company, as claimants cited in the R. G. Packard Company, owners of dredge No. 6, under the fifty-ninth rule. The court below dismissed the petition against the Packard Company, and directed a decree against the tug Overbrook, and claimant appeals.

There is no question as to the fault of the Overbrook. With the wind blowing across the East river into Newtown creek, and the flood tide, as the master of the Overbrook admits, shoving the tail of the tow in the creek and towards the anchored dredges, those on board failed to take the necessary precautions to avoid a collision, but stopped the tow and shortened up the hawsers, in order, as the master says, "to let them sag in the creek," but, in fact, so as to cause the collision, by reason, as he says, of "the tide and wind, I suppose, what there was of it, I suppose it swung them in faster than I supposed." This miscalculation is no excuse. The D. H. Miller, 76 Fed. 877, 22 C. C. A. 597.

It seems equally clear that dredge No. 6 was in fault. The scow and two dredges, extending over a hundred feet out into the entrance of the creek, constituted a substantial obstruction to navigation. And if this obstruction was justified by the necessities of their work, yet those in charge knew, or should have known, the exigencies of navigation at this point, and that with conditions of wind and tide such as prevailed on the afternoon in question the entire available space might be required by tows entering said creek. It was therefore their duty to use all reasonable precautions to minimize the difficulties and dangers attendant upon their occupancy of the entrance to the creek. That the master of the dredge realized this obligation is shown by his testimony that "when we are not using the anchor we lower * * * it down until we are sure a loaded scow or anything like that wouldn't get hurt on it." He further testified that the anchor was not on the bottom, and that there was nothing to prevent his putting it there or up on deck, but that he preferred to have it hanging in the way which caused the damage. That it is a fault to have an anchor thus hanging in the water is well settled. The Palmetto, 1 Biss. 140, Fed. Cas. No. 10,699; The Kolon, 9 Ben. 197, Fed. Cas. No. 7,923; The Sontag (D. C.) 40 Fed. 174; The Margaret, 6 P. D. 76.

Counsel for the dredge seeks to limit the application of this rule to cases "where the vessel is moored in narrow and crowded waters or is violating a regulation." But the decisions show that a vessel while lying at a pier is bound to have her anchor out of the way of passing vessels, whenever there is liability to collision or danger of interference with their movements. The test of responsibility for so exposing such a vessel or its tackle that it is liable to injure another vessel is whether it is a "dangerous exposure"; that is, "an exposure that is clearly liable to receive or inflict injury in the ordinary chances, mistakes, or hazards of navigation, such as are to be reasonably apprehended as liable to arise." The Mary Powell (D. C.) 31 Fed. 622, affirmed (C. C.) 36 Fed. 598.

The evidence shows that this point is one where such boats in the East river are habitually distributed; that it is customary to round to and shorten hawsers for this purpose, as was done on this occasion; and that, admitting the fault on the part of the tow, the barge would not have been injured except for the position of the dredge's anchor. In these circumstances, it is clear that the dredge is liable for the consequences of this collision, even under the rule as stated by counsel for respondent.

Counsel for the dredge invokes the protection of rule 25 of the Inland Regulations, as to the duty of vessels in a narrow channel; but we think that this rule should not be applied in a case like this, where such a maneuver was necessary and, as already shown, is, with proper precautions, the usual one for taking tows into the creek, and where the vessel whose negligence caused the damage was lying at a dock and thus projecting far out across the channel.

There should be a division of damages.

The decree of the court below is reversed, and the cause is remanded to the court below with instructions to enter a decree in accordance with this opinion, each party to recover one-half of his costs in each court.