### THE WILLIAM J. QUILLIN.

(District Court, S. D. New York. April 5, 1907.)

COLLISION—VESSEL LYING AT PIER—PROJECTING ANCHOR.

> A schooner lying in a slip, with her anchor projecting slightly beyond the rail toward the stem, but not so as to protrude beyond her side at the widest part, *held* not liable for an injury to a barge by collision with such anchor while being pushed past the schooner by a tug, where the anchor could plainly be seen and would not have touched the barge if care had been taken by the tug.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 101.]

In Admiralty. Suit for collision.

Amos Van Etten and H. H. Flemming, for libellants.

Hyland & Zabriskie, for claimant.

ADAMS, District Judge. The schooner William J. Quillin was lying at a wharf on the south side of a slip bounded by piers 4 and 5 of the Delaware, Lackawanna & Western Railroad Company at Hoboken, New Jersey, on the 5th day of March, 1905, and the barge John J. Luby, belonging to the libellants, was being pushed, about 3 o'clock in the afternoon, past the schooner by the tug Ira M. Hedges, to obtain a berth further in the slip, when the top of the barge's cabin on her port side came in contact with a projecting anchor stock on the starboard bow of the schooner and was damaged. Action was brought by the owners of the barge against the schooner on the ground that she was in fault in permitting her anchor to extend beyond the line of the vessel. The action was defended upon the claim that another schooner was lying on the other side of the slip, thus restricting the space between the two schooners, and the anchor of the Quillin was perfectly visible to any one entering the space carefully and the Quillin was not in fault as she carried her anchor in the customary place.

The testimony shows that the Quillin was a four masted schooner 37 feet 4 inches beam with her anchor fastened to the cathead near the bow, where the vessel was 25 feet 8 inches wide, and resting upon the starboard rail, with the lower stock against the side of the vessel and the other about 2½ feet out from the end of the cathead, which was 3 feet and 8 inches from the side of the vessel. The schooner on the opposite side of the slip, which was 110 feet wide, was somewhat larger than the Quillin and the space between them allowed but 34 feet, of which the Luby occupied 26 feet in passing, leaving but 4 feet on each side of her if she were navigated exactly between them.

When the tug arrived, with the barge on her starboard side, it was seen that there was not room enough for them to pass side by side and the tug, dropping astern, pushed the barge ahead of her. When the anchor was reached, the upper and protruding stock struck the barge's cabin. If the barge had been kept perfectly straight in passing along the schooner's side, she would not have touched the anchor stock as the narrowing of the vessel towards the stem left only a width of 25 feet 8 inches on deck at the cathead and its projection, 6 feet 2 inches including the cathead, was not sufficient to cause the stock to protrude beyond the side of the vessel at her widest part.

The navigation of the barge was in charge of the tug and the projection of the anchor over the side should have been seen and guarded against. I have no doubt that the primary fault was that of the tug for proceeding ahead in such a careless manner. The tug, however, is not in the action and if the schooner was in fault the libellants are entitled to a decree against her as a joint tort-feasor.

There has been an attempt on the part of the libellants to show that leaving an anchor projecting even to the extent that this one protruded beyond the side of the vessel was negligence but I find no such preponderance of testimony to that effect as would warrant imposing these damages upon the schooner. She was in a protected place and there would have been no danger to a vessel going further up the slip if ordinary care had been exercised. It is not a case like The Overbrook. 142 Fed. 950, 74 C. C. A. 120, where there was a dangerous exposure of an anchor through the vessel to which it belonged allowing it to hang over the outside, without necessity, in a thoroughfare, so that it became by its immersion in the water an obstruction to navigation. The danger was recognized by the master of the vessel and it was held a fault to have the anchor exposed to collision, as it was under the circumstances. The anchor in the case under consideration was in plain view and though it would have been more prudent to have had it inboard, it does not seem a case in which the vessel should be held.

Libel dismissed.