### THE BLACKHEATH.

(District Court, S. D. Alabama, S. D.   July 13, 1907.)

#### No. 1,012.

1. SHIPPING—NEGLIGENT NAVIGATION—DESTRUCTION OF BEACON.

The rule that a moving vessel is presumably in fault for a collision with one at anchor and without fault, and can only exonerate herself by showing that the collision was the result of inevitable accident, applies with greater force to a collision with a stationary object fixed in the land in the bottom of the water, such as a beacon.

2. SAME—LIABILITY OF VESSEL—INEVITABLE ACCIDENT.

Inevitable accident, which will exonerate a vessel from liability for a collision, or for a destruction of property, does not mean an accident which was unavoidable under any circumstances, but one which could not be prevented by the exercise of ordinary care, caution, and maritime skill.

3. SAME.

The destruction of a government beacon, which was stationary on a derrick constructed on piles on the side of the Mobile Ship Channel by a steamship, which came into collision with it when coming up the channel against a strong ebb tide, a freshet in the river, and a north wind, held to have been due to an error of judgment or want of proper skill or attention on the part of the harbor pilot, who was navigating the ship, in failing to stop and let go the anchor in time to avoid the collision when he found she did not answer to her helm, for which fault the ship was liable.

4. ADMIRALTY—PROCEDURE—ADJUDICATION OF COLLATERAL ISSUES.

In a suit in rem against a ship to recover for the destruction of a beacon, for which she was held in fault, the court will not adjudicate a claim by the claimant of the ship against the pilot, who was in charge of her navigation, but will leave such claim to be determined in an independent suit.

In Admiralty.

Wm. H. Armbrecht, for libelant.

Pillans, Hanaw & Pillans, and Stevens & Lyons, for claimant.

TOULMIN, District Judge.   This is a suit by the libelants to recover damages for the loss of a beacon, being one of the Mobile Ship Channel lights belonging to libelants, and which was destroyed by the collision of said steamship Blackheath with said beacon.   The ship was steaming up said channel to the port of Mobile, in the charge of and navigated by a Mobile bar pilot, in the forenoon of January 24, 1903. There was a north wind blowing at the time, a freshet in the river, a strong ebb tide, and an eddy in the river caused by a large Italian brig aground in the channel and lying almost fore and aft therewith, but somewhat nearer the west than the east side thereof.   There was room sufficient on either side of said brig for the passage of vessels of the

size and draft of the Blackheath, but in the then conditions of the current and eddy it was more or less hazardous to attempt to do so. The beacon was some 450 or 500 feet down the channel towards the Gulf and on the west side of the channel. It was stationary and on a derrick constructed on piles which were driven in about 15 feet of water some 20 feet in the bottom of the south or west side of the channel.

The libelants claim that the collision and consequent loss was occasioned by the negligence, want of skill, and improper conduct of the persons navigating said steamship. The defense set up is, in substance and effect, inevitable accident, caused by the conditions mentioned as to current, tide, eddy, etc.

"A vessel in motion is required to keep out of the way of a vessel at anchor, if the latter is without fault, unless it appears that the collision was the result of inevitable accident; the rule being that the vessel in motion must exonerate herself from blame by showing that it was not in her power to prevent the collision by adopting any practicable precautions." The Virginia Ehrman, 97 U. S. 309–315, 24 L. Ed. 890; The D. H. Muller, 76 Fed. 878, 22 C. C. A. 597. The one ship ought to be able to get out of the way of the other ship if she sees her; and the other is a helpless thing, which cannot do anything. This rule must apply with greater force to a stationary object fixed to the land in the bottom of the water, as in the case of the beacon in question. "Inevitable accident," in a case of this description, means that the parties charged with fault have endeavored, by every means in their power, with due care and caution and a proper display of nautical skill, to prevent the occurrence of the accident. The Mabey, 14 Wall. 204, 20 L. Ed. 881. "Inevitable accident" does not mean an accident unavoidable under any circumstances, but one which the party accused cannot prevent by the exercise of ordinary care, caution, and maritime skill. The question then is: Was the accident in this instance an "inevitable accident"? Could it have been prevented by the exercise of ordinary care, caution, and maritime skill; or, in other words, was the pilot navigating the Blackheath guilty of any fault?

The occupation or employment of a pilot of a vessel is one requiring skill. His occupation and situation implies skill and knowledge of the waters he undertakes to navigate—knowledge of the channel, the current, tides, shoals, etc. St. Bt. New World v. King, 16 How. (U. S.) 469, 14 L. Ed. 1019. It is well settled that the failure to exert that needful skill and knowledge, either because it is not possessed, or from inattention or error of judgment, is a fault. St. Bt. New World v. King, supra; Mary S. Blees (D. C.) 120 Fed. 44, and authorities cited therein; City of Macon, 121 Fed. 688, 58 C. C. A. 434.

The pilot was not an insurer, but he was bound to bring to the performance of the duty he assumed reasonable skill and care, and to exercise them in everything relating to the work he had undertaken until it was accomplished. The evidence shows that he first saw the brig aground when the steamship was about a mile from and below the beacon; that he knew how wide the channel was; that he knew there was a strong ebb tide, a freshet, and a north wind blowing, but

did not actually know of the eddy, or at least the extent of it; that when he first saw the brig in the channel he slowed the ship down with just enough headway to give good steerage. It does not clearly appear from the evidence exactly when the order to port the wheel was given; but there is evidence which tends to show that when the ship got in about half her length of the beacon it was seen that she did not answer to her helm, which had theretofore been put to port, and, perhaps, hard to port. The pilot then ordered the engine "full speed ahead, to give more power against her rudder to make her steer better." The weight of evidence is that the ship ran head on into and over the beacon, entirely destroying it. It also appears that about the time the ship struck the beacon, or nearly so, the order for "full speed astern" and to let go the anchor was given. This seems to have been the proper thing to do, but it came too late to avoid the collision. The failure of the pilot, when he lost control of the ship, or saw that she did not answer her helm, to stop and let go the anchor before she had approached so near the beacon as to render any efforts then to avoid the collision futile, and his conduct in putting the ship "full speed ahead" when he did, where she was in such dangerous proximity to the beacon, were errors, if not more than errors—a fault. Conceding that he knew the existing conditions, and what were the proper things to be done, as shown by the evidence, he should have governed himself accordingly, and acted with greater promptness in the execution of those things. The evidence, in my opinion, shows a clear error of judgment, if not a want of proper skill, or inattention to his duty and to consequences, on the part of the pilot. The ship is answerable for the faults of the pilot. The China, 7 Wall. 53, 19 L. Ed. 67. A decree will be entered in favor of the libelants for $1,100.

The claimant of the ship, subsequent to the filing of the libel in this case, filed a petition, alleging that if the collision occurred through any fault or negligence chargeable to the ship, the same was the fault or negligence of the pilot, George Godbold, committed by him in the business and calling of piloting said ship up said channel of Mobile Bay, and prayed that said Godbold be made a party to this suit and proceeded against with said vessel, and that such decree be rendered by the court as to law and justice may appertain. Said Godbold was cited and appeared in defense of the suit. He, however, has not been proceeded against by the libelants. The court does not deem it its duty, or feel called on in this suit, to adjudicate any claim or supposed claim, which the owners of said ship may have against said Godbold as pilot for his negligence or fault in the navigation of the ship, and for which the ship is held chargeable in this suit. The court therefore does not here decide or express any opinion on the validity of such claim and the liability of the pilot thereon.

The claimant's petition will be dismissed, but without prejudice to his right to bring suit on such claim, as he may be advised.

Let an order be entered in accordance with this opinon.