### KENT v. EASTERN DREDGING CO.

#### (District Court, D. Maine. January 8, 1912.)

#### No. 136.

COLLISION (§ 71*)—FAULT—OBSTRUCTION OF HARBOR BY DRILL BOAT.

A drill boat engaged in widening a harbor, lying to one side of the channel and held in position by cables extending to either side, *held* not in fault for the wrecking of a schooner by striking one of her cables, where the master of the schooner, when 100 feet away and when she could have gone about, saw the cables in the channel, but, instead of going about and making sure that he could pass through the channel, attempted to pass on the other side of the drill boat between it and the shore.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 71.*]

In Admiralty. Suit by Martin J. Kent, as master and part owner of the schooner J. H. G. Perkins, against the Eastern Dredging Company. Decree for respondent.

Edward C. Plummer, for libelant.

N. & H. B. Cleaves, Stephen C. Perry, and Robert T. Whitehouse, for respondent.

HALE, District Judge. The libelant, in behalf of himself and the other owners of the two-masted schooner J. H. G. Perkins, sues the Eastern Dredging Company to recover for the wreck of the schooner, occasioned by reason of the respondent's drill boat obstructing the entrance to Cape Porpoise Harbor. On October 3, 1908, the respondent was operating a drill boat named the Rockport, opposite Goat Island lighthouse at Cape Porpoise, for the purpose of excavating and widening the harbor to a width of about 200 feet, and to a minimum depth of 18 feet at low water. The work was done pursuant to a contract between the respondent company and the United States government. At the time in question, the drill boat was moored by six cables, three forward and three aft, with her bow heading out of the harbor in a southerly direction. The middle cables forward, and from the stern, ran to anchors in deep water. The cables from the starboard and port bows, forward and astern, ran to ring bolts on the eastern and western shores. The drill boat was moored with its center directly over the line of the most easterly cut made by her in her excavations. She was lying just outside the harbor channel, near the regular location of the red harbor channel buoy, which at the time in question had been removed further up the harbor. The regular width of the channel is about 140 feet, its maximum depth 35 feet, its minimum depth 18 feet, with shoal water to the shore of Goat Island on the east, and bold water off the shore of Folly Island on the west. The maximum rise and fall of the tide is about 9 feet. On October 3, 1908, just at sunset, the libelant, in command of his schooner, was proceeding to the westward. Passing the can buoy at the entrance of Cape Porpoise Harbor, he laid a course up the harbor toward the drill boat, with the wind on his beam. A three-knot westerly breeze was blowing. On arriving about 100 feet from the drill boat he saw her westerly cable. From the observation which he gave it, he thought it obstructed the channel, and left him no room to proceed, to the westward of the drill boat, up the harbor. He therefore changed his course a point to east, with a view of going by on the easterly—the in-shore side—of the drill boat. He then saw the easterly cable while yet about 70 to 80 feet away. Capt. Kent testifies that he called out to those on board the drill boat to slacken cable, but received no response. It was then too late for him to come about. He further says that the schooner passed halfway over the easterly cable, brought up on the cable, then paid off to starboard, and went upon the rocks, where she was left by the tide, and became a total loss. From the captain's testimony it appears that when he arrived at a point 100 feet from the drill boat he "could have tacked all right and cleared the drill." He was familiar with the harbor, having been in and out 15 times. At a point 100 feet from the drill boat he saw the westerly cables.

Without deciding precisely where the drill boat was, I am satisfied from the whole testimony that she was so far to the eastward that there was no room upon the in-shore side for a vessel to pass up the river in safety. It seems clear that the captain must have known that the boat could not be kept in position without cables upon both

her sides, and that, if there were cables upon the westerly side, there were cables also on her easterly side; but, aside from the question of cables, from his familiarity with the harbor he ought to have known that there was not room to pass upon the easterly side of the drill boat. It was clearly his duty to tack and come about, and give himself an opportunity to make sure that he could proceed safely up the regular channel. The whole testimony leads me to believe that there was sufficient room in that channel, and that, a few minutes before, another vessel had passed there, and gone up the harbor. There was nothing in the wind or weather to prevent him from tacking, coming about, and making sure of the channel. It was light enough for him to do this without danger, for, from his own testimony, it appears that he saw the cable, and the position of the drill boat. I have no hesitation in finding that the captain of the schooner was in fault, in that, when he was 100 feet away from the drill boat, he did not tack and come about, and find out whether he could safely go up the regular channel to the westward of the drill boat.

Capt. Kent complains of the absence of a lookout upon the drill boat. According to his contention, the only service that could have been rendered by such lookout would have been to warn the schooner when she got within 100 feet of him. But if the lookout had been there he could only have advised the captain that it was impracticable to pass up on the easterly side of the drill boat. This, from his knowledge of the harbor, the captain should clearly have known. The lookout, then, if he had been there, could have advised Capt. Kent of nothing which he did not know, or should not have known.

The absence of light upon the drill boat could not have contributed to the injury; for the captain of the schooner saw the cables; he saw everything which it was necessary for him to see, in order for him to execute the proper maneuver to relieve himself from danger. The whole testimony induces me to believe that he could safely have come up the main channel on the westerly side; but, if not, he clearly could have seen his position and could have escaped the peril before him. In The D. H. Miller, 76 Fed. 877, 22 C. C. A. 597, the Court of Appeals in this circuit found that a moving vessel colliding with a dredge at anchor must exonerate herself from blame by showing that it was not in her power to prevent collision by any practical precautions. In speaking for the Court of Appeals, Judge Putnam said:

"A fault charged against the barge with reference to the first collision is that her scow, intended to receive the dredged material, was lying on her port side, thus narrowing the channel, while it might have been, with somewhat less convenience, laid on her starboard; and with reference to the second, which occurred Sunday, an alleged fault was that she had not brought home her bucket, but that it and its appurtenances were allowed to project some 30 or 40 feet beyond the forward part of the barge, and that the steamer drifted with the tide against this bucket, coming in collision with it only and would have cleared the hull of the barge. With reference to each of these particulars there are no such known usages, or such specific evidence in the record, as justifies us in treating them as anything more substantial than mere suggestions. Nor did the facts suggested introduce elements of difficulty seriously embarrassing the movements of the steamer, or making it impracticable for her to keep clear. Moreover, had the location of the scow or the position of the bucket in either case so narrowed

the passage that it was impossible for the steamer to go by without striking, or even only extremely hazardous to attempt going, the steamer would still be in fault, as she was navigated in broad daylight, with full knowledge of existing conditions. The result is that, as to them, the rule applies that, where one vessel is clearly proven in fault, the other is not to be held guilty on mere presumptions or suggestions arising from the fact that a collision occurred. The Oregon, 158 U. S. 186, 197, 15 Sup. Ct. 804, 809 [39 L. Ed. 943], and the cases there cited."

In the case at bar, as in the Miller Case, the faults charged against the drill boat are not sustained by affirmative, substantial evidence. On the whole, I feel bound to hold that the respondent was not in fault.

Under all the circumstances, I am inclined, however, to give no costs against the libelant. The decree must be: Libel dismissed, but without costs for either party.