### THE CHEMUNG. THE BAKER BROS. THE W. S. TAYLOR.

(District Court, S. D. New York. September 13, 1918.)

1. COLLISION ⊙⇒91—FAULT—SELECTING SIDE TO PASS.
    Tug B. B., with tow, having already lapped tow of tug B., on B.'s starboard side, when B. and tug T., with tow, all in mid-stream, and in close proximity, exchanged signals for starboard passing, could assume T. would pass her to starboard, and was not in fault in selecting that side to pass.

2. COLLISION ⊙⇒105—PRIMARY FAULT—CROWDING IN PASSING—EVIDENCE.
    Evidence in suit for collision between tow of tug B. B. and that of tug T. *held* to show primary fault to be with T., in not giving B. B. sufficient room to pass between T. and tug B., which had exchanged signals for starboard passing when, all being in mid-stream and in close proximity, B. B. was lapping tow of B. on B.'s starboard side.

3. COLLISION ⊙⇒102—CONTRIBUTORY FAULT.
    The danger having been created by the fault of one vessel, the other will not also be condemned, unless her fault, occurring, if at all, in the stress of the danger, appears clearly and satisfactorily.

In Admiralty. Suit for collision by the Potter Transportation Company, owner of the barge Chemung, against the steam tug Baker Bros.; the W. S. Taylor being impleaded. Decree against the W. S. Taylor alone.

George W. P. Whip, of New York City, for libelant.
J. A. Martin, of New York City, for Baker Bros.
T. Catesby Jones, of New York City, for the W. S. Taylor.

HUTCHESON, District Judge. This is a collision case, in which the Potter Transportation Company, owner of the barge Chemung, charges the steam tug Baker Bros. with liability, and the steam tug

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Baker Bros. impleads the tug W. S. Taylor, claiming that the fault lies with that tug.

The collision occurred on December 28, 1916, in the East river, about mid-stream, just off of Hudson street, Brooklyn. The weather was clear and no wind. The testimony shows that at and about the point of collision the only boats on the river were the Bern and her tow, the Baker Bros., with the barge Farrell in tow, the W. S. Taylor, with three barges, including the Chemung, bunched, and the ferryboat Maine, with perhaps one or two small boats, between the Bern and the New York shore. On some points there is no conflict, but on the vital points in the case the testimony is not only conflicting, but quite confusing.

Those matters which are not disputed are that the ferryboat Maine was on the Brooklyn side of the channel, the tug Bern was on the Manhattan side, and that the river was at this point about 1,400 feet wide. It was also agreed that the Bern and the Taylor exchanged signals for a starboard to starboard passing, and that this was done because it was desirable, if not necessary, for the Bern to keep inside at that point. The distance in feet from the Manhattan shore of the Bern and the distance in feet of all vessels both from the respective shore and from each other presents a mass of conflicting testimony, all of which is plainly inaccurate and unreliable. Out of this mass of testimony, however, it clearly appears that the Bern and her tow were near the middle of the river, favoring the Manhattan side, when the Bern and the Taylor exchanged their signals, and that the Bern continued to draw slowly toward the Manhattan side; her tow however, maintaining up to the point of collision a position almost in midstream.

It is undisputed that the Taylor and the Bern not only exchanged signals, but proceeded to pass each other starboard to starboard as agreed; but there is very sharp conflict on the question of whether the Taylor and the Baker exchanged signals, and, if so, what signals were exchanged. The witnesses for the libelant and for the Taylor, except Capt. Bill, all declare that the Baker blew no signals. Capt. Bill, however, admits hearing a danger signal from the Baker. Witnesses for the Baker stoutly maintain that the Taylor and the Baker exchanged the same signals, which had passed between the Taylor and the Bern, and that in addition the Baker blew danger signals. While there is some evidence to the contrary, the great preponderance of the testimony clearly establishes that at the time the Bern and the Taylor exchanged passing signals the Baker had already lapped on the tow of the Bern and was in such proximity to the Bern as that the prudent and proper thing for the Baker to do was to make a starboard passing of the Taylor, just as the Bern had already been signaled to do.

[1] This being so, it is not material to the decision of this case to determine whether the Baker gave any signals, as she had a right to assume that the Taylor would pass the Baker to starboard, just as she passed the Bern, and it was her duty to so maneuver as to pass on that course. I, however, believe and hold that the Baker did exchange

whistles with the Taylor, as testified to by the witness on behalf of the Baker, and that for that further reason she had the right to make a starboard passing. I therefore hold that the Baker was without fault in the matter of signals, and further, that the proper method for the two tugs to pass was starboard to starboard, and not port to port, as contended by libelant, and that the Baker is without fault in selecting the starboard side to pass the Taylor.

[2] In this view, then, the only issue left for determination is whether, in making the passage, the Taylor and the Baker, either or both, failed to exercise the care that was incumbent upon them under the circumstances, either in the matter of giving a wide enough berth to the other boat to pass, or in the matter, at the very time of the collision, of handling it in a proper and skillful way. It is proper to state that the libelant and the Taylor are under the same ownership, and in that sense have a common cause against the Baker; yet the theory, as disclosed by the libel and the testimony of the libelant's witness, that the fault of the Baker lay in attempting to pass the Taylor and her tow starboard to starboard, instead of port to port, is wholly different from the theory advanced by the Taylor, in her answer and through her witnesses, that the fault of the Baker was in hauling over to the Brooklyn shore, instead of pulling toward the New York shore, though the Taylor, in addition to this claim, also charges the Baker with fault in permitting her tow to sheer as she passed the Taylor.

The testimony of the captain of the barge Chemung, offered on behalf of the libelant, puts the fault on the Baker, in that it did not make a port to port passing, and claims that this was the passage which was the reasonable and logical one, and in his testimony he declares that there was not room for the Baker to pass between the Taylor and the Bern, or, as he significantly puts it on page 16 of his testimony:

"The Bern had gone by, but his tow had not; that is why he [the Baker] was caught in the trap and could not get out of it."

Later, this captain says that the Baker slewed his boat over right alongside of the Bern's tow and tried to clear him, that he slewed his tug over as close to the Bern's tow as he could, and that this slewing of the tug caused the barge to sheer. On page 25 he says:

"When we [the Chemung] passed the Bern, we were between 30 and 40 feet from the Bern. The course of the tug Chemung was not changed at all; she came straight down on her course."

This view of the facts, that the accident was caused by the Baker being squeezed between the Bern and the Taylor, is substantially the theory which is supported by the testimony of the witnesses for the Baker. The Baker's witnesses, however, claim that this condition was caused by the fault of the Taylor in not pulling over to the Brooklyn shore to make a safe starboard passing. The witnesses for the Taylor, however, proceed on a different theory, and some of them declare that the Taylor went as close to the Brooklyn shore as she dared on account of the ferryboat Maine, and that she left ample space between

the Taylor and the Bern for the Baker to pass. If there were any reliable testimony in the record on the matter of actual distances in feet from object to object in the river, this clear conflict and apparent confusion could be easily cleared up. As a matter of fact, however, the court will be compelled to disregard absolutely the estimates of the various witnesses in feet, and rest the decision of the case upon the fact of the position of the boats established by the testimony, not expressed in terms of feet.

The substance and effect of the whole tetsimony clearly establishes that the collision occurred near the middle of the river. It is undisputed that, when the Taylor and the Bern exchanged signals, the Taylor was in the middle of the river. The preponderance of the testimony shows that at that time, or shortly thereafter, the Baker and the Taylor were head and head, and that thereafter the Taylor shifted her course, some of the witnesses say not at all, and some very slightly. The captain of the Chemung testified that the course of the Chemung was not changed at all; that she came straight down on her course. I think it clear, therefore, that the evidence establishes that the Taylor was at fault in not so directing her course as to give the Baker a wider berth to pass between her and the Bern, and that, had the Taylor directed her course more to the Brooklyn shore, as she should have done, the collision would not have occurred. I shall therefore hold the Taylor primarily responsible for the collision.

[3] The only question remaining is whether the Baker, in maneuvering just before the collision, was handled in such a negligent way as to contribute to the accident. I think it clear that there was a slight sheer on the part of the Farrell, caused by the stopping of the Baker just prior to the collision. But for this sheer, it is claimed by the Taylor, the collision would not have occurred, and that therefore the Baker is either wholly or partly responsible. The Baker admits the stopping, and claims that it was necessary to stop in order to avoid the collision with the Chemung; the distance being not only very slight between them, but that barge having itself a sheer, due to the slackening of a line from the Taylor to her tow. The captain of the Taylor admits that the barges took a slight sheer, but claims to have straightened that out prior to the collision; while the witnesses for the Baker claim that the sheer was a considerable one and that it was not straightened out.

Had the vessels up to that point been equally blameless, if the Taylor had given the Baker as wide a berth as possible, and were the question of the fault to turn entirely upon the matter of the sheer, I might have difficulty in determining which set of witnesses should be given credence on that point. In view, however, of the fact that I find the Taylor did not conduct her passage up the river with the care necessary, that she crowded the Baker into a space so narrow as that it was designated by the captain of the Chemung as a "trap," it ought not to lie in the mouth of the Taylor to say that, in the stress of the danger which occurred as a result of that crowding, everybody testifying that danger signals were being blown, the Baker should be held to the exercise of that meticulous care which would assume a prescience of

what conditions would be and an omnipotence to avoid that which happened. It is a familiar principle that, where the danger has been created by the fault of one vessel, the other will not also be condemned, unless her fault appears clearly and satisfactorily. The Stadacona, 242 Fed. 624, 155 C. C. A. 314. As was said by Judge McPherson in The Saratoga (D. C.) 180 Fed. 620:

"The fault of the Saratoga being plain, it is well settled that the fault in the Taunton must be clearly proved, before she can be called upon to contribute to the cost of the injury."

It is therefore my opinion, and I so hold, that the Taylor is solely responsible, and a decree may be entered adjudging the W. S. Taylor to be solely at fault, and appointing a commissioner to ascertain the damages.

---

⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes