## THE NORGE.

### NEW YORK DREDGING CO. et al. v. THE NORGE.

(Circuit Court of Appeals, Second Circuit. April 18, 1893.)

COLLISION—STEAMER AND DREDGE—EVIDENCE.

The N., a steamship in charge of a pilot, entered the main channel of New York harbor at a speed of 10 knots an hour, in the daytime, with the R. dredge boat on her starboard bow, and the A. dredge boat on her port bow, about half a mile away. The A. was on the west side of the channel, and there were three or four vessels near her also approaching the N.

The A. had her dredging signals flying, and was practically a stationary object. The N.'s course was set to pass between the A. and the R., and when about a quarter of a mile away she slowed up for that purpose, but, when within 500 feet of the A., the latter, supposing that the N. intended to pass starboard to starboard, suddenly hoisted her dredges, and changed her course so as to move directly across the bows of the N., and was struck by the N., and instantly sunk. If the A. had maintained position, no collision would have occurred. *Held,* that the N. was without fault.

Appeal from the District Court of the United States for the Eastern District of New York.

In Admiralty. Libel by the New York Dredging Company and others against the steamship Norge. The district court dismissed the libel without filing any opinion. Libelant appeals. Affirmed.

J. F. Mosher, for appellant.

Harrington Putnam, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. This is an appeal by the libelants from a decree of the district court dismissing the libel in a cause of collision; the libelants being the owners, charterers, officers, and surviving members of the crew of the steam dredge Advance, which was sunk by the steamship Norge, August 2, 1890, and became a total loss. The collision took place in the main ship channel in the lower bay of New York, in broad daylight, when the sea was smooth and the weather fine. Judge Benedict, by whom the cause was heard in the court below, dismissed the libel without any opinion. We are called upon to determine the merits of a controversy which turns wholly upon the credibility of witnesses, without the benefit of the judgment of the trial judge before whom they were examined. We have given the case presented by the record our best consideration, and think the facts of the collision are these:

The Norge, a first-class ocean steamer, provided with the latest steering-gear improvements, was on her way from Stettin with passengers and cargo for New York. As she was about to turn from the swash channel northerly into the main ship channel, she observed the Advance. She entered the main ship channel under a port wheel, going at a speed of about 10 knots an hour, until, when about half a mile away from the Advance, she steadied to pass the Advance on a course N. by E. At that time the Advance was at work near the middle of the channel. She was heading about S. S. E., and had her dredging signals flying. She was practically a stationary object, having her drags on the bottom of the channel, and moving with the tide at less than a mile an hour. Opposite, and a little distance to the eastward from the Advance, was the steam dredge Reliance, proceeding towards the eastern side of the channel. On the westward side of the channel, in the vicinity of the Advance, and approaching the Norge, were three or four vessels. The Norge was in charge of a pilot. He was on the bridge, at the wheel, and her master was on the port side of the bridge, and her third officer was on the starboard side.

When the Norge steadied, she had the Advance between one and two points on her port bow, and her course was shaped with a view to pass the Advance port to port, quite near, and between her and the Reliance. As the Norge approached the Advance, and when about a quarter of a mile away, the order to stand by was given, and her engines were slowed; and at that time there was room, which was gradually widening as the Reliance moved to the eastward, sufficient to permit the Norge to pass safely between the two vessels. The proofs show that it is quite customary for pilots to take large steamers, while passing dredges like the Advance, at work, within a very few feet of them. The Norge maintained her course, and reduced speed until she got within about four or five hundred feet of the Advance, when the latter blew two blasts of her steam whistle, and was immediately after seen to be moving ahead, and to the port, directly across the bows of the Norge. Thereupon the latter immediately reversed, and hard-starboarded her helm, but notwithstanding struck the Advance nearly a right-angled blow on the starboard side, near the pilot house, and sunk her instantly. The master of the Advance, apparently acting under the supposition that the Norge was intending to pass the Advance starboard to starboard, and seeing that, instead of doing so, she was drawing to the port side, thought the Advance would be run down, and ordered her dredging apparatus hoisted, and put her ahead at full speed under a starboard helm. This movement on the part of the Advance could not have been anticipated by the Norge. By the time the Advance had got under headway, so that those on the Norge could understand her purpose, the vessels, were so near together that it was impossible for the Norge to avoid collision.

At the time when the Norge steadied on her course to pass the dredge, it was her duty, under article 21 of the international regulations, to keep to the eastward side of the channel; that being on her own starboard side. Under the circumstances, it was entirely safe and practicable for her to do so. It was apparently safer for her to pass the Advance on the eastward side, and go between her and the Reliance, than to attempt to pass on the westward side of the Advance, where she would be more or less embarrassed by the other vessels. On the other hand, the Advance, being practically at rest, and not immediately under control for maneuvering, had no duty to perform, by way of avoiding the Norge, except to maintain her position. The Norge fulfilled her duty; but the Advance, by suddenly abandoning her work, and going ahead full speed as the Norge was drawing near, violated hers.

There is not the slightest reason for attributing the collision to the want of a proper lookout, or of proper diligence in any other respect, on the part of the Norge. She did not go at an unreasonably high rate of speed while approaching the Advance. She did maintain vigilant observation of the Advance. There was no reason why she should not have passed the Advance safely port to port, if the Advance had not left her own position, and there was no

conceivable reason for any such change of course as is attributed to her by the witnesses for the Advance. The improbability that the. Advance would have left her position, and run into the jaws of destruction, without good reason, is counterbalanced by the improbability that the Norge would have unnecessarily changed a course deliberately and prudently selected.

It is proper to say that, if we were not of the opinion that the collision should be attributed solely to the fault of the Advance, it ,would notwithstanding be our duty to affirm the decree of the court below, because, if the collision was not owing to her fault, there certainly is no preponderance of evidence to establish fault on the part of the. Norge, and, as the libelants have the burden of proof, they have not made out their case. The decree is affirmed, with costs of the appeal, and the cause is remitted to the district court with instructions to decree accordingly.